**Fill in this information to identify the case:**

| | |
|---|---|
| Debtor 1 | Raul Desamito |
| Debtor 2 (Spouse, if filing) | Leonila Desamito |
| United States Bankruptcy Court for the: | Northern District of Illinois |
| Case number | 18-14412 |

Official Form 410S1

# Notice of Mortgage Payment Change 12/15

If the debtor's plan provides for payment of postpetition contractual installments on your claim secured by a security interest in the debtor's principal residence, you must use this form to give notice of any changes in the installment payment amount. File this form as a supplement to your proof of claim at least 21 days before the new payment amount is due. See Bankruptcy Rule 3002.1.

**Name of creditor:** U.S. Bank Trust National Association, as Trustee of the Bungalow Series IV Trust

**Court claim no.** (if known): 3-1

**Last 4 digits** of any number you use to identify the debtor's account: 5 8 8 6

**Date of payment change:** Must be at least 21 days after date of this notice: 05/01/2021

**New total payment:** Principal, interest, and escrow, if any: $ 1,730.23

## Part 1: Escrow Account Payment Adjustment

1. Will there be a change in the debtor's escrow account payment?
   - ☐ No
   - ☒ Yes. Attach a copy of the escrow account statement prepared in a form consistent with applicable nonbankruptcy law. Describe the basis for the change. If a statement is not attached, explain why: _____

   Current escrow payment: $ 990.98    New escrow payment: $ 1,001.09

## Part 2: Mortgage Payment Adjustment

2. Will the debtor's principal and interest payment change based on an adjustment to the interest rate on the debtor's variable-rate account?
   - ☐ No
   - ☒ Yes. Attach a copy of the rate change notice prepared in a form consistent with applicable nonbankruptcy law. If a notice is not attached, explain why: _____

   Current interest rate: 5.000 %    New interest rate: 5.880 %
   Current principal and interest payment: $ 658.52    New principal and interest payment: $ 729.14

## Part 3: Other Payment Change

3. Will there be a change in the debtor's mortgage payment for a reason not listed above?
   - ☒ No
   - ☐ Yes. Attach a copy of any documents describing the basis for the change, such as a repayment plan or loan modification agreement. *(Court approval may be required before the payment change can take effect.)*

   Reason for change: _____
   Current mortgage payment: $ _____    New mortgage payment: $ _____

Official Form 410S1   Notice of Mortgage Payment Change   page 1

Debtor 1  **Raul Desamito**
          First Name    Middle Name    Last Name

Case number (if known) __18-14412__

## Part 4: Sign Here

The person completing this Notice must sign it. Sign and print your name and your title, if any, and state your address and telephone number.

*Check the appropriate box.*

☐ I am the creditor.

☑ I am the creditor's authorized agent.

**I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.**

✖ /s/ Molly Slutsky Simons
Signature

Date  05/03/2021

Print:  Molly Slutsky Simons
        First Name    Middle Name    Last Name

Title  Attorney for Creditor

Company  Sottile & Barile, Attorneys at Law

Address  394 Wards Corner Road, Suite 180
         Number    Street

Loveland        OH    45140
City            State    ZIP Code

Contact phone  513-444-4100

Email  bankruptcy@sottileandbarile.com

Official Form 410S1            Notice of Mortgage Payment Change            page **2**

**SN SERVICING CORPORATION**
323 FIFTH STREET
EUREKA CA  95501

(800) 603-0836
Para Español, Ext. 2660, 2643 o 2772
8:00 a.m. - 5:00 p.m. Pacific Time
Main Office NMLS #5985
Branch Office NMLS #9785

RAUL DESAMITO
366 DEERING LN
BOLINGBROOK IL  60440

Analysis Date: April 27, 2021                                                                                                                              Final
Property Address: 366 DEERING LANE  BOLINGBROOK, IL 60440                                                                                       Loan:

## Annual Escrow Account Disclosure Statement
### Account History

This is a statement of actual activity in your escrow account from June 2020 to May 2021.  Last year's anticipated activity (payments to and from your escrow account) is next to the actual activity.

| Payment Information | Current: | Effective Jun 01, 2021: |
|---|---|---|
| Principal & Interest Pmt: | 658.52 | 729.14 ** |
| Escrow Payment: | 990.98 | 1,001.09 |
| Other Funds Payment: | 0.00 | 0.00 |
| Assistance Payment (-): | 0.00 | 0.00 |
| Reserve Acct Payment: | 0.00 | 0.00 |
| Total Payment: | $1,649.50 | $1,730.23 |

| Escrow Balance Calculation | |
|---|---|
| Due Date: | May 01, 2021 |
| Escrow Balance: | 5,366.73 |
| Anticipated Pmts to Escrow: | 990.98 |
| Anticipated Pmts from Escrow (-): | 0.00 |
| Anticipated Escrow Balance: | $6,357.71 |

** The terms of your loan may result in changes to the monthly principal and interest payments during the year.

| | Payments to Escrow | | Payments From Escrow | | | Escrow Balance | |
|---|---|---|---|---|---|---|---|
| Date | Anticipated | Actual | Anticipated | Actual | Description | Required | Actual |
| | | | | | Starting Balance | 0.00 | 8,213.11 |
| Jun 2020 | | 990.98 | | | * | 0.00 | 9,204.09 |
| Jun 2020 | | | | 4,738.05 | * County Tax | 0.00 | 4,466.04 |
| Jul 2020 | | 990.98 | | | * | 0.00 | 5,457.02 |
| Aug 2020 | | 990.98 | | | * | 0.00 | 6,448.00 |
| Aug 2020 | | | | 4,738.05 | * County Tax | 0.00 | 1,709.95 |
| Sep 2020 | | 990.98 | | | * | 0.00 | 2,700.93 |
| Sep 2020 | | 148.64 | | | * Escrow Only Payment | 0.00 | 2,849.57 |
| Sep 2020 | | 990.98 | | | * | 0.00 | 3,840.55 |
| Oct 2020 | | 990.98 | | | * | 0.00 | 4,831.53 |
| Dec 2020 | | 990.98 | | | * | 0.00 | 5,822.51 |
| Jan 2021 | | 990.98 | | | * | 0.00 | 6,813.49 |
| Feb 2021 | | 990.98 | | | * | 0.00 | 7,804.47 |
| Mar 2021 | | 43.29 | | | * Escrow Only Payment | 0.00 | 7,847.76 |
| Mar 2021 | | 990.98 | | | * | 0.00 | 8,838.74 |
| Mar 2021 | | 990.98 | | | * | 0.00 | 9,829.72 |
| Mar 2021 | | | | 2,079.44 | * Escrow Refund | 0.00 | 7,750.28 |
| Apr 2021 | | | | | | 0.00 | 7,750.28 |
| Apr 2021 | | | | 2,383.55 | * Homeowners Policy | 0.00 | 5,366.73 |
| | | | | | Anticipated Transactions | 0.00 | 5,366.73 |
| May 2021 | | 990.98 | | | | | 6,357.71 |
| | $0.00 | $12,083.69 | $0.00 | $13,939.09 | | | |

Page 1

An asterisk (*) indicates a difference from a previous estimate either in the date or the amount. If you want a further explanation, please call our toll-free number.

Last year, we anticipated that payments from your account would be made during this period equaling 0.00.  Under Federal law, your lowest monthly balance should not have exceeded 0.00 or 1/6 of the anticipated payment from the account, unless your mortgage contract or State law specifies a lower amount.  Your mortgage contract and State law are silent on this issue.

Analysis Date: April 27, 2021  
Borrower: RAUL DESAMITO  
Final  
Loan:

## Annual Escrow Account Disclosure Statement
## Projections for Coming Year

This is an estimate of activity in your escrow account during the coming year based on payments anticipated to be made to and from your account.

| Date | Anticipated Payments | | Description | Escrow Balance | |
| --- | --- | --- | --- | --- | --- |
| | To Escrow | From Escrow | | Anticipated | Required |
| | | | Starting Balance | 6,357.71 | 6,511.20 |
| Jun 2021 | 988.30 | 4,738.05 | County Tax | 2,607.96 | 2,761.45 |
| Jul 2021 | 988.30 | | | 3,596.26 | 3,749.75 |
| Aug 2021 | 988.30 | | | 4,584.56 | 4,738.05 |
| Sep 2021 | 988.30 | 4,738.05 | County Tax | 834.81 | 988.30 |
| Oct 2021 | 988.30 | | | 1,823.11 | 1,976.60 |
| Nov 2021 | 988.30 | | | 2,811.41 | 2,964.90 |
| Dec 2021 | 988.30 | | | 3,799.71 | 3,953.20 |
| Jan 2022 | 988.30 | | | 4,788.01 | 4,941.50 |
| Feb 2022 | 988.30 | | | 5,776.31 | 5,929.80 |
| Mar 2022 | 988.30 | | | 6,764.61 | 6,918.10 |
| Apr 2022 | 988.30 | | | 7,752.91 | 7,906.40 |
| May 2022 | 988.30 | 2,383.55 | Homeowners Policy | 6,357.66 | 6,511.15 |
| | $11,859.60 | $11,859.65 | | | |

(Please keep this statement for comparison with the actual activity in your account at the end of the escrow accounting computation year.)

Your escrow balance contains a cushion of 988.30.  A cushion is an additional amount of funds held in your escrow balance to prevent the balance from becoming overdrawn when an increase in the disbursement amount occurs.  Under Federal law, your lowest monthly balance should not exceed 1,976.61 or 1/6 of the anticipated payment from the account, unless your mortgage contract or State law specifies a lower amount.  Your mortgage contract and State law are silent on this issue.

Your ending balance from the last month of the account history (escrow balance anticipated) is 6,357.71.  Your starting balance (escrow balance required) according to this analysis should be $6,511.20.  This means you have a shortage of 153.49.  This shortage may be collected from you over a period of 12 months or more unless the shortage is less than 1 month's deposit, in which case we have the additional option of requesting payment within 30 days.  We have decided to collect it over 12 months.

We anticipate the total of your coming year bills to be 11,859.65.  We divide that amount by the number of payments expected during the coming year to obtain your escrow payment.

Page 3

Analysis Date: April 27, 2021
Borrower: RAUL DESAMITO

Case 18-14412    Doc    Filed 05/03/21    Entered 05/03/21 12:57:42    Desc Main
                        Document         Page 6 of 12

Final
Loan:

| **New Escrow Payment Calculation** | |
|---|---:|
| Unadjusted Escrow Payment | 988.30 |
| Surplus Amount: | 0.00 |
| Shortage Amount: | 12.79 |
| Rounding Adjustment Amount: | 0.00 |
| Escrow Payment: | $1,001.09 |

**Paying the shortage**: If your shortage is paid in full, your new monthly payment will be $1,717.44 (calculated by subtracting the Shortage Amount to the left and rounding, if applicable). Paying the shortage does not guarantee that your payment will remain the same, as your tax or insurance bills may have changed. If you would like to pay the shortage now, please pay the entire amount of the shortage before the effective date of your new payment. To ensure that the funds are posted to your account correctly, please notify your asset manager that you are paying the shortage.

NOTICE OF RIGHT TO CANCEL PRIVATE MORTGAGE INSURANCE: If you currently pay private mortgage insurance premiums, you may have the right to cancel the insurance. In most cases, you have the right to cancel private mortgage insurance if the principal balance of your loan is 80 percent or less of the current fair market appraised value of your home, and you have a good payment history on your loan. If you want to learn whether you are eligible to cancel this insurance, please contact us at 323 Fifth Street, Eureka, Ca 95501 or 800-603-0836.

**\* Please note if you have autopay/EFT set up on your loan, it is your responsibility to make sure your payment amount is updated. Enclosed is the EFT form that needs to be completed. Once completed, please fax to the number listed on the EFT form or return in the self-addressed envelope.**

After Recording Return to:

Bayview Loan Servicing, LLC
Attn: Collateral Department
4425 Ponce de Leon Blvd., 5th Floor
Coral Gables, FL 33146

[Space Above This Line For Recording Data]

## LOAN ADJUSTMENT AGREEMENT

This loan adjustment agreement is made and entered into as of February 21, 2013 (the "Effective Date"), by and between, Bayview Loan Servicing, LLC, ("Servicer") and RAUL    DESAMITO    , LEONILA  L DESAMITO    and CYNTHIA  SMITH ("Borrower").

### RECITALS

A. Servicer is the holder or servicing agent of the holder of that certain Promissory Note ("Note") dated 10/22/2005, executed by Borrower or Borrower's predecessor-in-interest in the original principal sum of $250,942.00.

B. The note evidences a loan ("Loan") to Borrower or Borrower's predecessor-in-interest on 10/22/2005, in the original principal sum of $250,942.00 along with a Deed of Trust or Mortgage ("Security Instrument") securing said Note. The Security Instrument creates a secured lien on certain real property ("Property") owned by Borrower (and is more specifically described in the Security Instrument). The Note and Security Instrument and all other loan documents related to the Loan are hereinafter collectively referred to as the "Loan Documents".

C. Due to adverse economic circumstances, Borrower has requested Servicer to adjust the scheduled amortization of the Note to permit Borrower to meet Borrower's obligations to Servicer in full and in a timely manner. The requested adjustment will benefit Borrower, Servicer and any junior lien holder, by avoiding the possible foreclosure of the Loan by Servicer. Accordingly, it is considered to be in the best interest of all concerned to enter this Loan Adjustment Agreement ("Agreement").

D. Borrower hereby agrees that this Agreement may only become effective upon Borrower's completion of the Stipulation Agreement dated February 21, 2013. If Borrower successfully completes all the terms of said Stipulation, Servicer will execute this Agreement and adjust the Loan accordingly. However, said execution is subject to Borrower's addressing and clearing of any and all title issues to Servicer's satisfaction. All payments made pursuant to the Stipulation Agreement (with the exception of the down payment mentioned below) will be credited to payments due under this Agreement.

E. Both Borrower and Servicer hereby agree that Servicer may, in its sole discretion, record this Agreement.

### AGREEMENT

NOW, THEREFORE, Borrower and Servicer hereby agree as follows:

1. **NOTE MODIFICATIONS:**
   (a) **Outstanding Debt:**
   Borrower agrees that the unpaid principal balance due on the Note of $242,452.18 (including credit for Stipulation Agreement downpayment), shall be decreased by $0.07 the amount of the unpaid installments, interest, late charges, fees and costs, and, if applicable, any advances for unpaid property taxes and/or insurance premiums ("Unpaid Sums Due"), for a total unpaid principal balance due of $242,452.11 ("New Balance"). Based on the consideration listed above, and other good and valuable consideration, Servicer agrees to defer and waive interest upon $98,524.64 ("Deferred Balance") of the New Balance until the loan matures on 03/01/2053 at which time the Deferred Balance shall be immediately due and payable as a balloon payment, as well as any outstanding amounts due under the terms of the mortgage. In the event that the Deferred Balance is not paid timely as agreed or in the event of a default under this agreement or the loan documents, interest shall accrue on the Deferred Balance at the rate in effect on the loan immediately prior to maturity or the time of default, and will adjust thereafter according to the terms of the Note. Borrower agrees to the accuracy of the allegations contained in the above Recitals as well as to the authenticity and validity of each document referred to herein and to the validity of the unpaid sums due and the New Balance. Borrower agrees to pay the Unpaid Sums Due to Servicer and that he/she has no defenses, claims, or offsets with respect thereto. Interest and payments will accrue on the New Balance at the interest rates, whether adjustable, variable or fixed, provided in the Note, unless modified by this Agreement.

Page 1 of 4

**(b) New Monthly Payments, Payment Adjustments:**

| Years | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Estimated Monthly Escrow Payment Amount* | Total Monthly Payment | Payment Begins On | Number of Monthly Payments |
|---|---|---|---|---|---|---|---|
| 1-5 | 2.000% | 03/01/2013 | $435.85 | $929.44 | $1,365.29 | 04/01/2013 | 60 |
| 6 | 3.000% | 03/01/2018 | $506.36 | Adjust Annually | Adjust Annually | 04/01/2018 | 12 |
| 7 | 4.000% | 03/01/2019 | $580.78 | Adjust Annually | Adjust Annually | 04/01/2019 | 12 |
| 8 | 5.000% | 03/01/2020 | $658.52 | Adjust Annually | Adjust Annually | 04/01/2020 | 12 |
| 9-40 | 5.880% | 03/01/2021 | $729.14 | Adjust Annually | Adjust Annually | 04/01/2021 | 384 |

Effective on 03/01/2021, Borrower's rate of interest will be 5.88% and will remain fixed for the remaining life of the loan.

**(c) New Maturity Date:**
The maturity date will be 03/01/2053, on which date any unpaid interest and all other sums due shall be paid in full.

**2. ESTABLISHMENT OF IMPOUND/ESCROW ACCOUNT:**
Borrower acknowledges that Servicer will establish an impound/escrow account for the collection of property taxes and insurance premiums if such account is not currently in existence. Servicer will analyze the impound/escrow account from time to time. As a result of this analysis, the escrow portion of Borrower's monthly payment may change. Borrower further acknowledges that the escrow portion of his/her monthly payment may be substantially higher than the estimate. (Note: In certain states, impound/escrow accounts do not collect for payment of taxes pertaining to Bond/Special Assessments and Irrigation/Water District).

**3. RELEASE:**
Borrower releases Servicer, its subsidiaries, affiliates, agents, officers and employees, from any and all claims, damages or liabilities of any kind existing on the date of this Agreement, which are in any way connected with the Loan, the servicing of the Loan, or events which lead up to or resulted in Borrower entering into this Agreement. Borrower waives any rights which Borrower may have under federal or state statute or common law principle which may provide that a general release does not extend to claims which are not known to exist at the time of execution, including without limitation, California Civil Code § 1542, which provides as follows: A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR.

**4. AGREEMENT NOT TO ENCUMBER:**
Borrower agrees that it will not voluntarily or involuntarily: (i) grant any interest in or option with respect to, any of the Property; or (ii) create or permit to exist any lien, security interest, or other charge or encumbrance upon or with respect to any of the Property, except for Servicer's already existing security interest and lien, or sell the Property for the benefit of itself or any party or in any manner other than that contemplated by this Agreement.

**5. ASSIGNMENT OF LEASES AND RENTS AND RECEIVERSHIP:**
The existing Mortgage and Note shall be amended to include the following: In the event the loan is in default and Borrowers are generating any gross income from the property by virtue of a tenancy or any other arrangement, Borrowers agree to irrevocably assign and transfer to Servicer the right title and interest of Borrower in all existing and future leases and agreements whether or not in writing, and any rents and deposits derived and collected therefrom, affecting and pertaining to the use enjoyment or occupancy of any part of the premises. Borrower consents to the entry by Servicer, Servicer's agent, or court appointed receiver or designee, to enter the premises to collect the rents and enforce the leases. Borrower further consents and waives opposition to the appointment of a court appointed Receiver in the event the loan is in default.

**6. CHANGE IN FINANCIAL STATUS:**
In the event Borrower or any successor or assignee, shall (i) file with any bankruptcy court of competent jurisdiction or made the subject of any petition under Title 11 of the United States Code, as amended ("Bankruptcy Code"); (ii) be the subject of any order for relief issued under the Bankruptcy Code; (iii) file or be the subject of any petition seeking any reorganization, arrangement, composition, readjustment, liquidation, dissolution or similar relief under any present or future federal or state act or law relating to bankruptcy, insolvency, or other relief for debtors; (iv) have sought, or consented to, or acquiesced in, the appointment of by any court of competent jurisdiction approving a petition filed against such party for any reorganization, any trustee, receiver, conservator, or liquidator; or, (v) be the subject of any order, judgment or decree entered arrangement composition, readjustment, liquidation, dissolution, or similar relief under any present or future federal or state act or law relating to bankruptcy, insolvency, or other relief for debtors, then, subject to court approval, Servicer shall thereupon be entitled and Borrower irrevocably consents to relief from any automatic stay imposed by Section 362 of the Bankruptcy Code or otherwise, on or against the exercise of the rights and remedies otherwise available to Servicer, including, but not limited to, immediate termination of this Agreement and filing and/or proceeding with the foreclosure and damage action, and any other remedy as otherwise provided at law in equity, and Borrower hereby irrevocably agrees that he/she shall not object to and hereby irrevocably waives his/her rights to object to Servicer's requests for such relief. This provision is a material inducement for Servicer to enter into this Agreement.

**7. NO OTHER CHANGES:**
Except as expressly adjusted by this Agreement, all of the covenants, agreements, stipulations, and conditions in the Note and the Security Instrument remain unmodified and in full force and effect. The Security Instrument continues to secure on a first and prior lien basis the due and punctual payments of the Note, as modified by this Agreement. None of Borrower's obligations or liabilities under the Security Instrument shall be diminished or released by any provisions herein. Nor shall this Agreement in any way impair, diminish, or affect any of the Borrower's rights or remedies in the Security Instrument whether such rights or remedies arise herein or by operation of law. Any inserted terms, changes or additions to this Agreement will immediately render it null and void. Borrower is encouraged to review this Agreement with his/her legal advisor prior to signing it, but by signing the below Borrower has voluntarily signed this Agreement.

**8. NO RELIANCE; CONSTRUCTION:**
Each of the parties hereto hereby declares that, prior to the execution of this Agreement, they have apprized themselves of sufficient relevant data in order that they might intelligently exercise their own judgments in deciding on the contents of this Agreement and whether to execute this Agreement. Borrower declares that his/her decision to execute this Agreement is not as a result of undue influence or duress, and not predicated on or influenced by any declarations or representations not set forth in this Agreement, by Servicer, or any other person or party or any predecessors in interest, its successors, assigns, officers, directors, employees, agents or attorneys. Each of the parties hereto hereby further acknowledges and agrees that each of them has had significant input in the development of this Agreement and this Agreement shall not therefore be construed.

**9. NO ORAL MODIFICATION:**
This Agreement may not be amended or modified in any way except by a written instrument executed by all of the parties hereto.

**10. SUCCESSORS AND ASSIGNS:**
This Agreement shall be binding upon and inure to the benefit of the signatories to this Agreement and each of their respective successors and assigns. The obligations of the signatories to this Agreement shall not be delegated or assigned.

**11. ATTORNEY'S FEES, JURY TRIAL WAIVER:**
In the event that any party hereto brings suit for the collection of any damages resulting from, or the injunction of any action constituting, a breach of any terms or provisions of this Agreement, then the prevailing party shall be entitled to recover all reasonable court costs and attorney's fees, at all levels.

**12. ADDITIONAL AGREEMENTS:**
I agree to the following:

(a) In the event Borrower defaults under this Agreement, without waiving any rights and remedies otherwise available to Servicer, Servicer shall thereupon be entitled to require and Borrower irrevocably consents to enter into either Servicer's Deed-In-Lieu or Short Sale program with respect to the Property. Under the Deed-In-Lieu program you will voluntarily transfer ownership of the Property to Servicer or Servicer's designee to satisfy the amounts due on the Loan. The Short Sale program is specifically designed to assist with the sale of the Property to avoid foreclosure, even if the sale price may not pay off the amount owed on the Loan.

(b) Borrower will execute such other documents as may be necessary to consummate the terms and conditions of such Deed-In-Lieu or Short Sale program and will cooperate fully with Servicer in obtaining any title endorsement(s), or similar title insurance product(s), and/or affidavit(s) that are necessary or required by the Servicer's procedures in connection with such program(s).

From:FPLD Business Center        6307593141        02/25/2013 11:22        #658 P.009/009

**13. PARTIAL INVALIDITY:**
If any term, covenant or condition of this Agreement or its application to any person or circumstances shall be held to be illegal, invalid or unenforceable, the remainder of this Agreement or the application of such term or provisions to other persons or circumstances shall not be affected, and each term hereof shall be legal, valid and enforceable to the fullest extent permitted by law, unless an essential purpose of this Agreement would be defeated by the loss of the illegal, unenforceable, or invalid provision. In the event of such partial invalidity, the parties shall seek in good faith to agree on replacing any such legally invalid provisions with valid provisions which, in effect, will, from an economic viewpoint, most nearly and fairly approach the effect of the invalid provision and the intent of the parties in entering into this Agreement.

BORROWER HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVES HIS/HER RIGHT TO A TRIAL BY JURY IN RESPECT TO ANY LITIGATION BASED HEREON OR ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS AGREEMENT, THE LOAN DOCUMENTS, ANY OTHER DOCUMENTS EXECUTED OR DELIVERED IN CONNECTION HEREWITH, AND ANY AGREEMENT CONTEMPLATED TO BE EXECUTED OR DELIVERED IN CONJUNCTION HEREWITH OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF ANY PARTY. THIS PROVISION IS A MATERIAL INDUCEMENT FOR SERVICER ENTERING INTO THIS AGREEMENT.

IN WITNESS WHEREOF, Servicer and Borrower have executed this Loan Adjustment Agreement.

Borrower:

By: _[signature]_        Date: 02-25-13
RAUL DESAMITO

By: _[signature]_        Date: 02-25-13
LEONILA L DESAMITO

By: _[signature]_        Date: 02-25-13
CYNTHIA SMITH

Servicer:

By: _____        Date: _____
Vice President, Bayview Loan Servicing, LLC

Licensed Loan Originator: Ivette Perez
MLO License Number: 842126
Direct: 877-650-0140 Ext. 6254 Monday - Friday 9:00 am to 6:00 pm ET
Fax: 877-360-9593

Page 4 of 4

02/25/2013    11:16AM

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| In Re: | Case No. 18-14412 |
| Raul Desamito<br>Leonila Desamito | Chapter 13 |
| Debtors. | Hon. Judge LaShonda A. Hunt |

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that I have served a copy of this Notice of Mortgage Payment Change upon the above-named parties by electronic filing or, as noted below, by placing same in a properly addressed and sealed envelope, postage prepaid, and depositing it in the United States Mail at 394 Wards Corner Rd., Suite 180, Loveland, OH 45140 on May 3, 2021, before the hour of 5:00 p.m.

Jay M. Reese, Debtors' Counsel
lawofficeofjmreese@sbcglobal.net

Glenn B. Stearns, Chapter 13 Trustee
stearns_g@lisle13.com

Patrick S Layng, U.S. Trustee
ustpregion11.es.ecf@usdoj.gov

Raul Desamito, Debtor
366 Deering Lane
Bolingbrook, IL 60440

Leonila Desamito, Debtor
366 Deering Lane
Bolingbrook, IL 60440

Dated: May 3, 2021     Respectfully Submitted,

/s/ Molly Slutsky Simons
Molly Slutsky Simons (OH 0083702)
Sottile & Barile, Attorneys at Law
394 Wards Corner Road, Suite 180
Loveland, OH 45140
Phone: 513.444.4100
Email: bankruptcy@sottileandbarile.com
Attorney for Creditor